UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
IN RE:                          )
                                )
J. GRAHAM ZAHORUIKO,            )
                                )
            Debtor.             )
                                )
_____ )
                                )
PREMIER CAPITAL, LLC,           )
                                )
            Plaintiff-Appellee, )
                                )
      v.                        )  CIVIL ACTION
                                )  NO. 13-40142-WGY
J. GRAHAM ZAHORUIKO,            )
                                )
            Defendant-Appellant.)
                                )
_____ )
```

YOUNG, D.J.                                September 25, 2014

MEMORANDUM AND ORDER

**I.   INTRODUCTION**

This appeal of a final order of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") is brought by J. Graham Zahoruiko ("Zahoruiko"), seeking to overturn a judgment denying the discharge of his debt under section 727(a)(4)(A) of the Bankruptcy Code.

**A.   Procedural History**

On November 9, 2012, Premier Capital, LLC ("Premier") initiated an adversary proceeding against Zahoruiko in

1

Bankruptcy Court, seeking judgment either denying the discharge of Zahoruiko's debt under 11 U.S.C. § 727(a)(4) or excepting debts owed to Premier from discharge under 11 U.S.C. § 523(a)(2)(B). See United States Bankruptcy Court, District of Massachusetts (Worcester), Adversary Proceeding No. 12-04119 ("Adversary Docket"), Compl. Objecting Dischargeability & Discharge Debts, ECF No. 1. A trial was held before Judge Melvin S. Hoffman on May 29, 2013. Adversary Docket, Hearings Held, May 29, 2013; see also Adversary Docket, Tr. Hr'g Re: Trial ("Trial Tr."), May 29, 2013, ECF No. 42.[1] On October 17, 2013, Judge Hoffman issued his findings of fact and conclusions of law and entered judgment for Premier on the first count of its complaint pursuant to 11 U.S.C. § 727(a)(4)(A). See Adversary Docket, Findings Fact & Conclusions Law Regarding Objection Discharge & Dischargeability ("Bankr. Ct. Opinion"), ECF No. 47; Adversary Docket, Judgment, ECF No. 48.[2]

Zahoruiko appealed the Bankruptcy Court's judgment, and the case was assigned to this Court on December 3, 2013. Elec. Notice, Dec. 3, 2013, ECF No. 6. Zahoruiko filed his appellant's brief on January 29, 2014. See Br. Def.-Appellant, G. Graham

---

[1] A copy of the transcript of the trial before Judge Hoffman has also been docketed in the instant appeal. See Tr. Hr'g Re: Trial, May 29, 2013, ECF No. 3.

[2] A copy of Judge Hoffman's judgment has also been docketed in the instant appeal. See Notice Appeal, Ex. 1, Judgment, ECF No. 1-1.

Zahoruiko ("Zahoruiko's Mem."), ECF No. 8. Premier filed an appellee's brief in opposition on February 12, 2014. See Appellee Premier Capital, LLC's Br. Opp'n Appellant-Debtor J. Graham Zahoruiko's Br. Appeal ("Premier's Opp'n"), ECF No. 9.

**B.    Undisputed Facts**

On May 1, 2012, Zahoruiko filed for bankruptcy under Chapter 13 of the Bankruptcy Code. See United States Bankruptcy Court District of Massachusetts (Worcester), Bankruptcy Petition No. 12-41662 ("Bankr. Docket"), Ch. 13 Voluntary Pet., ECF No. 1. Naturally, in the course of filing his Chapter 13 petition, Zahoruiko completed paperwork setting out in detail his financial circumstances as of May 1, 2012 (the "May 1 filings"), and much of the controversy in this case focuses on what those statements left out. See generally Trial Tr., Ex. 1, USBC Previous Ch. 13 12-41662 ("Bankr. R.") 12-52, ECF No. 3-1. In his Schedule B form, listing personal property, Zahoruiko failed to mention (1) his ownership of stock in two corporations, Refresh Software, Inc. ("Refresh") and Celltak Corp. ("Celltak"), (2) his ownership of Restricted Stock Units affiliated with his then-employer, Anthelio Healthcare Solutions, Inc. ("Anthelio"), and (3) his status as trustee of an asset-owning trust, the J. Graham Zahoruiko Living Trust (the "Trust"). See id. at 23-25; see also Zahoruiko's Mem. 4-5; Bankr. Ct. Opinion 2-3. In his Statement of Financial Affairs

3

("SOFA"), Zahoruiko failed to mention (1) payments he made to his brother made in the year leading up to the bankruptcy filing, (2) Zahoruiko's role and interest in Celltak, and (3) his unincorporated consulting business. See Bankr. R. 40-45; see also Zahoruiko's Mem. 4-5; Bankr. Ct. Opinion 3.

On June 8, 2012, the trustee of Zahoruiko's Chapter 13 bankruptcy estate convened a meeting of his creditors pursuant to 11 U.S.C. § 341(a). Premier's Opp'n 2. Zahoruiko was questioned at that meeting and gave responses admitting to his interests in Refresh and Celltak, the Trust, the payments to his brother, and his unincorporated consulting business, even as he testified that he believed his May 1 filings were complete. Zahoruiko's Mem. 4-7.

On June 22, 2012, Zahoruiko learned that he was being terminated from his employment at Anthelio and that he would be receiving a severance payment in the amount of $58,000. Id. at 17. Four days later, on June 26, Zahoruiko filed an amended Chapter 13 plan which updated some aspects of his financial circumstances but which did not mention the loss of his job or his expected severance payment. See Bankr. Docket, First Am. Ch. 13 Plan, ECF No. 22; Bankr. R. 54-62; see also Bankr. Ct. Opinion 7. On August 3, 2012, Zahoruiko moved further to amend his filings, Bankr. Docket, Mot., ECF No. 28; see Bankr. R. 63-70, and to convert his case to a bankruptcy filed under Chapter

4

7 of the Bankruptcy Code, Bankr. Docket, Mot., ECF No. 29. See also Bankr. Ct. Opinion 8. A second section 341 creditor's meeting convened on September 10, 2012, and Zahoruiko was questioned in great detail as to the assets omitted from his original Chapter 13 filings. See Premier's Opp'n 2; Zahoruiko's Mem. 6-7. No changes were made to these filings, however, until three minutes before 6 p.m. on May 28, 2013 -- the eve of Zahoruiko's trial before the Bankruptcy Court. Bankr. Ct. Opinion 5.

## II. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the Bankruptcy Court. Id. § 158(a)(1). "On intermediate appeal to a district court, a final order of the bankruptcy court is subject to the same familiar standards of review normally employed in direct appeals to the courts of appeals in civil cases generally." In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992). Accordingly, the Court accepts all of the Bankruptcy Court's findings of fact "unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses" before it. Fed. R. Bankr. P. 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). Conclusions of law, on the other hand, are reviewed de novo. In re IDC Clambakes, Inc., 727 F.3d 58, 63 (1st Cir. 2013) (citing Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995); In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991)). Mixed questions of law and fact "invok[e] a sliding standard of review, tending more toward de novo review at the law end." Braunstein v. McCabe, 571 F.3d 108, 124 (1st Cir. 2009); see also In re IDC Clambakes, 727 F.3d at 64.

**B.   False Oath Under Section 727(a)(4)(A)**

In accordance with the "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction," Bank of Marin v. England, 385 U.S. 99, 103 (1966), the statutory entitlement to discharge debt through bankruptcy ought "ordinarily be construed liberally in favor of the debtor," In re Tully, 818 F.2d 106, 110 (1st Cir. 1987). As such, section 727 of the Bankruptcy Code holds that discharge is to be denied only under certain circumstances. The exception relevant to this case is laid out in 11 U.S.C. § 727(a)(4)(A), providing that the Court properly may deny discharge if "the debtor knowingly and fraudulently, in or in connection with the case[,] . . . made a false oath or account." Id. "A debtor's Schedules and Statement of Financial Affairs are the equivalent

6

of a verification under oath." In re Warner, 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000).

For the exceptions to apply, "the Court must find that the debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with a case, (3) relating to a material fact." Id. at 26. A single false oath meeting these requirements is sufficient to deny discharge. In re Grondin, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999). Moreover, the party opposing discharge bears the initial burden of proving each of these elements by a preponderance of the evidence. Fed. R. Bankr. P. 4005; see also In re Sterman, 244 B.R. 499, 504 (D. Mass. 1999) (O'Toole, J.). Once a prima facie case has been established, however, "the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." In re Tully, 818 F.2d at 110 (quoting In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974)).

**C. Zahoruiko's Chapter 13 Schedules and SOFA Omissions**

The bulk of Zahoruiko's challenge to the Bankruptcy Court's denial of discharge focuses on the court's view of the omissions he made in the schedules and SOFA contained in his May 1 filings. The Bankruptcy Court found that Zahoruiko's testimony explaining these omissions lacked credibility, Bankr. Ct. Opinion 4, and that his incomplete filings constituted a knowing attempt to conceal certain assets from his bankruptcy trustee

7

and creditors, id. at 6. Zahoruiko asks this Court to rule that these findings were clearly erroneous. See Zahoruiko's Mem. 8-9.

### 1. The Bankruptcy Court's Finding of Fraudulent Intent

At trial, Zahoruiko testified that while he had fully disclosed the assets omitted from his Chapter 13 filings to his attorney, that attorney advised him to omit mention of his corporate positions and stock holdings in Refresh, Celltak, and Anthelio because they were worthless or otherwise meaningless. Bankr. Ct. Opinion 3-4 (noting, for example, Zahoruiko's testimony suggesting that Celltak was abandoned as a meaningful enterprise within "a few months" of its formation). The Bankruptcy Court found this testimony lacked credibility -- Zahoruiko's May 1 filings listed at least one asset valued at zero, indicating that he knew valueless assets still ought be disclosed, and a 2010 separation agreement between Zahoruiko and his then-wife contained provisions to divide and distribute his Celltak assets, indicating that Celltak was more than, as Zahoruiko represented, "just a concept." Id. at 4-5. Zahoruiko also testified at trial that he failed to disclose certain payments to his brother in the May 1 filings because Zahoruiko did not know, even at the time of trial, the meaning of the word "insider." Id. at 4. The Bankruptcy Court found the notion that Zahoruiko never asked his attorney about the term to be "at best

8

unjustified and at worst premeditated concealment," given other evidence in the record that Zahoruiko had consulted his attorney freely throughout the bankruptcy process. Id. at 5.

Moreover, the Bankruptcy Court unfavorably noted that despite several occasions on which Zahoruiko would have been alerted to the importance of disclosing these assets to his creditors, including at least one section 341 meeting and the filing of Premier's adversary complaint, Zahoruiko took no action to correct any of his May 1 omissions until the eve of his trial. Id. at 5-6. The Bankruptcy Court found that this behavior "portray[ed] not a debtor who inadvertently or innocently omitted information but one who foolishly hoped his day of reckoning would never arrive." Id. at 6.

### 2. Zahoruiko's Admissions to the Creditors

On appeal, Zahoruiko seeks to relitigate the factual issue of his intent by describing in detail the disclosures he made during his second section 341 creditor's meeting, related to his conversion to bankruptcy under Chapter 7. See Zahoruiko's Mem. 6-8. By his account, he openly admitted to all of the property interests he omitted from the May 1 filings as soon as he was questioned about them. This is evidence, Zahoruiko suggests, of his lack of awareness that the interests ought have been disclosed, and of the culpability of others, primarily his attorney, for failing to advise him to amend his filings. See,

9

e.g., id. at 11-12 ("Debtor's counsel never once . . . amended the Statements and Schedules to reflect the very testimony he had heard right in front of him, from his client, at both 341 meetings.").

While Zahoruiko's frank admissions could be construed as circumstantial evidence of his lack of fraudulent intent, the Bankruptcy Court concluded they were outweighed by other evidence. This finding was not clearly erroneous, and the Court will not disturb it.

The Bankruptcy Court's finding of fraudulent intent remains unaffected by Zahoruiko's attempts to blame his attorney for failing to advise him to update his Chapter 13 filings after the second section 341 creditor's meeting. Any advice Zahoruiko did or did not receive after that meeting has no bearing on the fact of his intent to make a false oath on May 1, 2012, the date of his original incomplete filings. Moreover, even if Zahoruiko's attorney's failure to give advice at that point were relevant, it would not aid Zahoruiko's appeal. The Court observes that

> it is well settled that reliance upon advice of counsel is . . . no defense where it should have been evident to the debtor that the [omitted] assets ought to be listed in the schedules. A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

In re Tully, 818 F.2d at 111 (internal citations omitted). Zahoruiko appears to be incredulous that a competent attorney

10

could have witnessed the sharp questioning Zahoruiko received at the second section 341 meeting without seeing fit to amend the May 1 filings. See Zahoruiko's Mem. 11-12. He overlooks, however, that it is nearly as dubious that a good-faith debtor could answer such questions without feeling compelled to at least inquire as to their significance. Zahoruiko's version of events suggests that even the commencement of this adversary proceeding did not timely prompt him to ask his attorney about the omissions that were the subject of Premier's complaint, or swiftly to amend the filings himself. His continued efforts to shift blame to his attorney are misguided.

### 3. The Effect of Zahoruiko's Omissions on His Creditors

On a different tack, Zahoruiko contends that because he made it convenient for creditors to discover his omitted interests and assets by freely admitting to them upon questioning, and because those interests were valueless, his creditors were not impaired by his initial false statements.[3] See

---

[3] Although sufficient legal grounds warrant dismissing this argument, it is worth mentioning that there is little reason even to accept the premise that Zahoruiko caused no real detriment to his creditors. Regardless of how forthcoming Zahoruiko was later on in the bankruptcy process, his initial omissions forced his creditors to bear the burden of discovering assets through their own investigation. Zahoruiko ought receive little credit for waiting until he was asked sufficiently specific and directed questions before mentioning items he ought have disclosed in the first place. See In re Tully, 818 F.2d at 111 ("A petitioner cannot omit items from his schedules, force

Zahoruiko's Mem. 13-16. He also suggests that it was improper for Premier to allege in its complaint false oaths related to assets and transactions it had long been aware of, and that it was clear error for the Bankruptcy Court to find fraudulent intent and materiality as to these omissions. Id. at 16. These are not, however, grounds to overturn the denial of a discharge under section 717(a)(4)(A).

First, it is absurd to suggest that Premier ought have omitted from its complaint any allegations or claims related to assets it knew about at the time of the complaint's filing. Adversary proceedings like this one have no raison d'être if the creditor does not suspect or know about assets that the debtor failed to disclose. In other words, that Zahoruiko's creditors eventually learned the full extent of his holdings, in spite of his schedules and SOFA, is what gave rise to Premier's complaint in the first place, and it does nothing to cure the false oaths for which Zahoruiko is responsible.

Second, the ease with which Zahoruiko ultimately may have led creditors to discover his assets has no bearing on his intent at the time he filed his initial incomplete disclosures

---

the trustee and the creditors, at their peril, to guess that he has done so -- and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack."); see also In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984) ("Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.").

on May 1, 2012. When courts have found a lack of fraudulent intent based on evidence that the omitted asset had no value, or that the debtor promptly admitted to the asset upon questioning, they have made such findings in the context of other evidence that the debtor's omission was a genuine mistake. See, e.g., In re Oliveira, Bankruptcy No. 05-11026-RS, 2007 WL 2908624, at *2 (Bankr. D. Mass. Sept. 28, 2007). Similar evidence is not present in this case, and Zahoruiko's contentions do little to demonstrate clear error in the Bankruptcy Court's finding that he possessed the requisite intent.

Third, to the extent Zahoruiko seeks to use this evidence to show that his omissions were not material, he cannot prevail. "Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions." In re Mascolo, 505 F.2d at 277 (citing Metheany v. United States, 365 F.2d 90 (9th Cir. 1966)). The requirement does not turn on whether creditors were actually harmed by an omission. See id. at 278 ("[T]he materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors." (quoting In re Slocum, 22 F.2d 282, 285 (2d Cir. 1927))); In re Stevens, 343 B.R. 11, 17 (D. Mass. 2006) (Gorton, J.) ("There is no exception for a false statement that did not mislead anyone."). Neither does the value of omitted assets determine whether a falsehood was material -- even the

omission of a closed bank account may warrant the denial of a discharge. See In re Mascolo, 505 F.2d at 278; see also In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious.").

**D. Zahoruiko's False Oaths at Trial**

In addition to his filing omissions, the Bankruptcy Court found that Zahoruiko's testimony at trial constituted false oaths. Bankr. Ct. Opinion 7. Zahoruiko seeks a ruling that these findings were also clear error. Zahoruiko's Mem. 16.

At trial, considerable evidence was adduced on the subject of Zahoruiko's amended Chapter 13 plan, in which he failed to mention that four days before filing, on June 22, 2012, Zahoruiko had learned of his termination from employment and of his former employer's plans to convey to him a $58,000 severance payment. See Bankr. Ct. Opinion 7. The Bankruptcy Court noted that during his trial testimony related to these omissions, Zahoruiko made at least two statements under oath that he was compelled to recant upon the presentation of evidence to the contrary. First, he disavowed knowledge of any amended plan until he was presented with a copy of the plan bearing his signature. Id. Then, Zahoruiko claimed that he did not know he

14

would be receiving a $58,000 severance payment until June 28, two days after the June 26 filing date of the amended plan. Id. at 7-8. Upon further examination, he admitted that he had actually learned of the news on June 22. Id. at 7. The Bankruptcy Court found that Zahoruiko knew his initial statements were false when he made them, "and that his motive in falsely testifying was to mislead the court." Id.

Zahoruiko contends that this finding was clear error, but his arguments are little more than conclusory assertions. He suggests that until his recollection was refreshed by hard evidence, he merely forgot about the existence of the amended plan. Zahoruiko's Mem. 20. He also argues that it is unrealistic to assume that he would be so brazen as to admit to learning of his severance payment on June 22 at a deposition and then tell a lie at trial one month later. Id. at 18. The Court notes, however, that on appeal, Zahoruiko is bold enough to assert that there is "not a significant difference" between learning of his severance payment before filing his amended plan and learning of the payment after filing. See id. at 17-18. He claims there was "nothing to be gained" by telling the lie he told at trial. Id. at 18. These representations are little more than makeweights. The Bankruptcy Court found Zahoruiko's representations at trial not to be credible, and this Court has no reason to conclude the finding was clear error.

**E.   Zahoruiko's Additional Arguments**

In addition to his factual challenges, Zahoruiko asks this Court to vacate the Bankruptcy Court's finding of a false oath in connection with his omission of the severance payment from his amended plan. Id. at 20-21. Allegations related to this omission, Zahoruiko says, were not contained in Premier's complaint against him and are thus not proper grounds to deny discharge under section 727(a)(4)(A). Id. at 21. Under Fed. R. Civ. P. 15(b), however, pleadings may be constructively amended during trial "by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2); see also Fed. R. Bankr. P. 7015 (providing that Fed. R. Civ. P. 15 applies to adversary proceedings in bankruptcy). "Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue." DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992), abrogated on other grounds by statutory amendment, Fed. R. App. P. 3, as recognized in Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 243 n.25 (1st Cir. 2010). The trial transcript shows that Zahoruiko made no objection to the introduction of evidence as to the omission of his severance payment. Moreover, Fed. R. Civ. P. 15(b) provides that even had Zahoruiko objected to evidence, he would have had to show that the evidence would prejudice his

defense, and he makes no argument that he would have been so harmed.

Lastly, Zahoruiko raises in passing the applicability of 11 U.S.C. § 348, regarding conversion, and he challenges the Bankruptcy Court's use of reasoning by analogy in citing to Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). Zahoruiko's Mem. 21. These arguments have no bearing on the Bankruptcy Court's findings and conclusions, nor this Court's ruling that the Bankruptcy Court's findings and conclusions ought be affirmed.

### III. CONCLUSION

In arguing his appeal, Zahoruiko makes much of the proposition that the Bankruptcy Code is designed to encourage and accommodate "fresh starts" for petitioners encumbered by debt, and he is right to do so. This Court adheres to the presumption that, much of the time, debtors ought receive the discharges they seek. But this entitlement is not without limitations, and one of them is that discharge may be denied if the debtor has knowingly and fraudulently made a false oath in connection with his bankruptcy case. 11 U.S.C. § 727(a)(4)(A). The purpose of this section "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." In re Tully, 818 F.2d at 110. The Bankruptcy Court's findings

and conclusions that Zahoruiko falls within the scope of this exception were not clearly erroneous, and they were legally sound. For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's judgment.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE